WIDMER *v.* SWEENEY ET. AL.

[No. 29,094.   Filed February 16, 1955.   Rehearing denied April 20, 1955.]

*F. Edward Dumas*, of Fowler, *Francis J. Murphy* and *Vernon E. St. John*, of Lafayette, for appellant.

*William S. Isham*, *Ernest M. Hawkins* and *H. Joe Rayle*, all of Fowler, for appellees.

ACHOR, J.—This is an appeal from a judgment authorizing the construction of an open ditch and for the repair of auxiliary tile which drained thereinto. Petition therefor was filed in 1950 by appellees.

The petition alleged that the petitioners were the owners of more than 10 per cent of the lands affected lying outside the corporate limits of any city; that the successful drainage of their respective lands, etc., could not be accomplished in the best and cheapest manner without affecting the lands of others, whose lands were described in the petition. That certain described highways would be benefited by the proposed drainage; that the work would be of public utility. That the damages and expenses of such drainage would be less than the benefits which would result to the owners of the lands

likely to be benefited thereby. That the land described was in a drainage area inadequately drained by an existing tile drain known in the County Records as the "Cheadle Ditch." That to adequately drain the area, it would be necessary to convert the present inadequate tile drain into *a new public open ditch and drain,* which construction would necessitate "corrections and specifications of more than 10 per cent of the present tile drain." The petition also alleged that, in addition to the construction of the described open ditch and drain, several tiles needed to be repaired to perform their drainage function properly by unstopping them in some instances and increasing the size in others.

The appellant filed his "remonstrance and objection" to both the preliminary and final reports of the surveyor and viewers. Trial was had on the remonstrance to the final report, which resulted in a finding and judgment confirming the same and establishing the ditch and drain. Appellant's motion for a new trial was overruled and this appeal followed.

Appellant, by his brief, presents two alleged grounds for reversal. They are as follows:.

1. That "the report was not according to law" for the reason that the surveyor and viewers did not file their preliminary report on the day designated by the court.

2. That the court had no jurisdiction over the subject matter for the reason that these proceedings, being entirely statutory, do not conform to the express limitations of the statute.

Other alleged errors are waived.

We consider appellant's first asserted ground for reversal. No question is presented upon this issue, unless we conclude that the failure to report, as directed,

was sufficient in itself to deprive the court of further jurisdiction in the proceeding, and that the issue may, for the first time, be presented on appeal.

Appellant contends that the question was raised by his "remonstrance and objection" to the preliminary report as filed, the particular objection being the first statutory grounds for remonstrance, to-wit: "That the report . . . is not according to law." §27-114, Burns' 1948 Repl., Acts 1945, ch. 221, §11, p. 1021. This "objection" was followed by seven other grounds of remonstrance on the merits of the report. In support of this contention, appellant cites the case of *Munson et al.* v. *Blake* (1885), 101 Ind. 78, 83, 84, 85. In that case, the commissioners did not file their report on the day fixed by the court. Appellant filed a petition for leave to file a belated remonstrance thereto, which petition was denied. In that case, the court stated:

> ". . . The provision of the statute requiring the court to designate a time for the commissioners to report is mandatory. . . . Commissioners of drainage can not, under this statute, violate or ignore the order of the court fixing the time for the filing of their report, and present a report when it suits their pleasure or convenience. . . .
>
> "It does not appear by the record in this case, that any objection was made to the filing of the report at the time it was filed, nor that any motion was made afterwards to reject the report because it was not filed at the proper time. It is too late to make such objections for the first time in this court. They should have been made at a proper time and manner in the court below. . . ."

The immediate question for us to consider is posed by the last sentence of the above quotation: Was the objection presented "at a proper time and manner in the court below?" The rule is fundamental that this

court will not reverse a ruling of the trial court unless the *specific objection* relied upon was presented to that court for consideration. See: *Higbee* v. *Peed et al.* (1884), 98 Ind. 420; *Meranda* v. *Spurlin et al.* (1885), 100 Ind. 380; *Hudson et al.* v. *Bunch et al.* (1888), 116 Ind. 63, 18 N. E. 390.

We conclude, therefore, that, because the grounds for the "objection" were not made specific, the objection was not in such a manner as to present any issue. Furthermore, had the objection been in proper form or manner, this court would have been obliged to affirm the ruling of the court below for the reason that the objection was not timely filed. Upon this issue, this court has stated:

> "The motion to dismiss or to reject the report must, however, be made at the earliest opportunity. Manifestly, the motion comes too late after the person making it has so far recognized the validity of the report as to remonstrate, or ask leave to remonstrate, against it upon its merits." *Blake* v. *Quivey et al.* (1888), 113 Ind. 124, 125, 126, 14 N. E. 916. See also: *Bohr* v. *Neuenschwander* (1889), 120 Ind. 449, 22 N. E. 416; *Triplett* v. *Carlson* (1934), 206 Ind. 673, 191 N. E. 82.

It is contended, however, that, conceding that the objection to the belated report of the surveyor and viewers may not have been "made at a proper time and manner" in the court below, nevertheless, such failure was such a deviation from the prescribed statutory procedure that it deprived the court of further jurisdiction of the proceedings. The recent case of *Underhill* v. *Franz* (1951), 230 Ind. 165, 173, 101 N. E. 2d 264, is considered as supporting this position. In that case, this court quoted from Freeman on Judgments 5th Ed. §355, p. 737, with approval, as follows:

> " 'A court has no power to do anything which is

not authorized by law and when its procedure is defined by a special statute, its judicial functions are essentially controlled thereby, and the remedy is confined to the mode prescribed, and the procedure so provided excludes resort to another or different procedure.' "

However, in dealing with the specific question here presented, our courts have held that, although failure on the part of the surveyor and viewers (commissioners) to file their report on the date fixed by the court *may be cause for striking the report,* such failure to perform their duty will not serve to discontinue the proceedings, unless such failure rests upon some fault or lack of diligence on the part of the petitioners. *Blake* v. *Quivey et al., supra; Claybaugh et al.* v. *The Baltimore and Ohio Railway Company et al.* (1886), 108 Ind. 262, 9 N. E. 100; *Triplett* v. *Carlson, supra; Williams* v. *Dexter* (1911), 175 Ind. 659, 95 N. E. 113; *Drinkwatter* v. *Eikenberry* (1946), 224 Ind. 84, 64 N. E. 2d 399.

As heretofore stated, appellant asserts, as second major ground for reversal, that the court had no jurisdiction over the subject matter. We recognize the fact that proceedings for the construction and repair of public drains were unknown to the common law and are altogether statutory and that therefore the jurisdiction of the court is restricted to the express limitations of the statute. *Myers et al.* v. *Sell et al.* (1948), 226 Ind. 608, 613, 81 N. E. 2d 846, 82 N. E. 2d 81; *Kilty* v. *Michael* (1921), 190 Ind. 374, 382, 130 N. E. 531; *Underhill* v. *Franz, supra.*

Appellant insists that there was no authority for the proceedings now before this court under either §27-104, Burns' 1948 Replacement, Acts 1945, ch. 221, §4, p. 1021 (commonly referred to as the "new drainage" section), or under §27-120, Burns'

1948 Replacement, Acts 1945, ch. 221, §16, p. 1021, (commonly referred to as the "repair" section). The petition before us contains all the allegations required under the new drainage section of the Act (§27-104, *supra*) and declares that the purpose of the proceedings is "to construct a new open public ditch and drain." However, appellant contends that the proceedings are excluded from the operation of this section of the Act because they, in fact, involved the repair and reconstruction of an established public drainage system.

Upon this issue, this court held, under similar statutes, that a "new drain" may be constructed over and along the line of an existing public drain. *Clifton* v. *McMains* (1916), 184 Ind. 539, 111 N. E. 801; *Grow* v. *Davisson* (1918), 187 Ind. 304, 119 N. E. 145; *Cox* v. *Shoe* (1931), 204 Ind. 55, 176 N. E. 625.

In still another case, it has been held that the "repair" statute was not intended to supersede the "new" construction statute and that a new ditch could be established along and over a pre-existing drain under the new construction statute; that the fact of such pre-existing drain merely imposed a duty upon the viewers to consider that fact "in determining the practicability, public utility and assessment of benefits, and the fact that a former ditch is found along the line of the proposed improvement merely goes to the question of the cost and expense of the proposed work." *Hauschild* v. *Roth* (1914), 181 Ind. 183, 187, 104 N. E. 11.

However, appellant contends that even though the construction of the "new open ditch," as here involved, may have been authorized under §27-104, *supra*, nevertheless these proceedings were taken out of the purview of that statute because of the fact that the petition, in addition to such "new" construction, also asked "that several auxiliary tiles which will drain into the pro-

posed open ditch and drain be *repaired* by unstopping them and increasing the size thereof, to the end that the entire drainage area may be properly drained." It is appellant's contention that this latter improvement clearly and exclusively involved the *repair of an existing drain* and that this improvement could be accomplished only under the *repair* section of the Act (§27-120, *supra*). It is appellant's position that such repair or reconstruction could not be combined with "new" construction in the same proceedings.

We do not so construe the statute as applied to the facts in this case. Upon this issue the court has also held that the question as to whether the improvement proposed constituted "repair" or "new" construction presents a question of fact for the court—*depending on the nature and extent of such improvements.* In the case of *Huffman* v. *Newlee* (1919), 189 Ind. 14, 27, 124 N. E. 731, this court stated:

". . . Who can say, as a matter of law, how material and how extensive such changes must be before they cease to be legitimate repairs and improvements and become the construction of a new and distinct drain? . . ."

It is unreasonable to believe that the legislature intended to absolutely prohibit the construction of necessary repairs and improvements in an established drainage system merely because the involved repairs upon or extensions thereto exceeded the limitations of the repair section of the statute, or that, in order to effect such extended improvements, petitioner should be required to resort to successive proceedings within the confines of that section of the Act.

It occurs to us that the only reasonable construction of the statute, considering its express terms and the

purpose for which it was enacted, requires the conclusion that (1) whether the improvement involves the construction of a new and original drainage system, or (2) the reconstruction and/or extension of an established drainage system which exceeds the express limitations of the "repair" statute (§27-120, *supra*), that such construction constitutes "new" construction within the purpose and meaning of the Act, and that such reconstruction and/or extension can be accomplished in a single proceedings by complying with the more stringent requirement of the "new" construction section of the Act (§27-104, *supra*). In the case at bar, the proceedings were filed under the "new" construction section of the Act and the court, on considering the extent and nature of the improvement, determined that it constituted new construction. It is not material to the proceedings that the improvement contemplated the utilization or repair of parts of an already established drainage system, to be incorporated into and made an integral part of the new drainage system. Such utilization certainly did not reduce the extent of the improvement, nor can we say that it materially changed the dominant character of the reconstruction.

We conclude, therefore, that the proceedings were proper under §27-104, and that the trial court had jurisdiction over the subject matter thereof.

Judgment affirmed.

NOTE.—Reported in 124 N. E. 2d 385.