WHITE, ET AL. *v*. CROW.

[No. 30,590.   Filed May 7, 1964.]

*Sandford Trippet* and *Arthur S. Wilson,* both of Princeton, for appellants.

*Weyerbacher, Lacey & Rideout,* of Boonville, and *McDonald & McDonald,* of Princeton, for appellee.

ACHOR, J.—This case comes to us on petition to transfer from the Appellate Court under Rule 2-23 of this court. See *White* v. *Crow* (1963), 192 N. E. 2d 478.

This is an action based upon a claim for personal services filed by the appellee against the appellants, which resulted in a verdict of $900.00 for appellee.

The following grounds are here urged as cause for reversal:

*One*: That the record does not disclose that the claim was formally denied by the administrator, or whether it was ever, in fact, transferred from the estate docket to the trial docket, as prescribed by Acts 1953, ch. 112, §1410, p. 295, being §7-810, Burns' 1953 Repl.

*Two*: That the court erred in overruling appellants' motion to make the claim more specific.

*Three*: That the court erred in denying the motion for change of judge.

*Four*: The court erred in permitting the proceedings to be recorded by audio recording, rather than by

shorthand reporter, as provided by Acts 1963, ch. 198, §1, p. 255, being §4-3501, Burns' 1946 Repl. (1963 Supp.).

*Five*: The court committed prejudicial and irreparable damage to the appellants' cause by his unwarranted reprimanding of counsel in the presence of the jury.

*Six*: Counsel for appellee committed prejudicial and irreparable damage to appellants' cause of defense by making improper remarks in his closing argument.

*Seven*: The amount of the verdict is not sustained by sufficient evidence, in that the amount is excessive.

We will consider these alleged errors in the order above enumerated.

*One*: Appellant did not raise any issue as to this specification prior to trial and, therefore, that issue is considered waived.

*Two*: The assignment asserted that the court committed reversible error in its denial of appellants' motion to require the claimant to make his claim more specific.

Appellee's claim in this case is stated as follows:

"For services to John J. White and his wife Mrs. Flossie White from January 1952 to March 6, 1953, house and yard work, nursing care, tending furnace, running errands, one year and two months and one week $1119.00

Nursing care at nights March 6, 1953 to April 19th for Mrs. Flossie White, services performed for John White in housekeeping, yard work to July 3, 1954 2370.00
$3489.00

The controlling statute—§7-802, Burns' 1963 Supp. —provides that the claimant shall state his claim by

filing a *"succinct definite statement thereof* in the office of the clerk of the court in which the estate is pending; . . . " As noted in the case of *Logan* v. *Hite, Admr.* (1938), 214 Ind. 233, 237, 13 N. E. 2d 702:

" . . . The word 'succinct,' as used, means brief, precise, exact. *Wolfe* v. *Wilsey* (1891), 2 Ind. App. 549, 28 N. E. 104. . . . "

The word "definite," as defined by Webster's Third International Dictionary, means "Marked by absence of the ambiguous, obscure, doubtful, or tentative and by certain clear statement of expression by means of flat, positive expression."

We concur in appellants' contention that appellee's claim as filed gives appellants a minimum of information regarding the specific evidence which they could anticipate in support of the claim. We therefore agree that in a better exercise of discretion, the trial court should have required that the claim [when transferred to the trial docket as the basis of a lawsuit] be made more specific.

However, in construing the statute, as applied to the pleading in this case, we are constrained by a long and uniform line of decisions of this and the Appellate Court which have stated that the trial court is granted broad discretion with regard to the degree of particularity with which a complaint or claim against an estate must state the facts on which it is predicated.

The substance of these decisions has been stated in Henry's Probate Law and Practice §6, pp. 410, 411:

"In preparing a claim for presentation and filing, no particular form is necessary, provided it is sufficiently definite to notify the executor or

administrator of its character and amount and succinct enough to bar another action thereon. . . .

"There must be however such a statement of fact as will show a legal liability on the part of the estate to the claimant, and indicate to the estate's representative what he is called upon to meet, with reasonable certainty; and the statement must contain all the facts necessary to show, prima facie, that the estate is lawfully indebted to the claimant. . . ."

The cases hold that, on appeal, the lack of definiteness in a claim will not be considered as reversible error if the claim was sufficient to apprise the administrator of the nature of the demand; to show prima facie legal liability of decedent, and to furnish a bar for another suit based on the claim. *Ayres* v. *Smith* (1949), 227 Ind. 82, 84 N. E. 2d 185; *Logan* v. *Hite, Admr.* (1938), 214 Ind. 233, 13 N. E. 2d 702; *Hull* v. *Burress* (1950), 120 Ind. App. 507, 93 N. E. 2d 213; 13 I. L. E. Executors and Administrators §137, p. 435.

Furthermore, assuming arguendo that such ruling was erroneous, the error did not constitute reversible error. The form of the claim was a matter within the discretion of the trial court and, on appeal, unless it is shown that the trial court so abused his discretion as to prevent the cause from being fairly tried upon the merits, the judgment will not be stayed or reversed. Acts 1881 (Spec. Sess.), ch. 38, §659, p. 240, being §2-3231, Burns' 1946 Repl. *First Bank & Tr. Co., etc., Exr.* v. *Tellson* (1954), 124 Ind. App. 478, 118 N. E. 2d 496; *Marcisz et ux.* v. *Osborne* (1954), 124 Ind. App. 574, 118 N. E. 2d 378, *Ind. Mut. Cyclone Ins. Co.* v. *Rinard, Admr.* (1936), 102 Ind. App. 546, 200 N. E. 452. In this case there is no showing that appellant was prejudiced by being

uncertain or mislead as to the evidence presented at the trial.

Under the circumstances before us, we cannot say that the overruling of the motion to make more specific prevented the cause from being fairly tried upon its merits, so as to require a reversal of the judgment and a new trial of the cause.

*Three*: The facts in this case, as pertaining to appellants' contention that the court erred in denying their motion for change of judge, are almost identical as those presented in the case of *White* v. *Sloss* (1964), 245 Ind. 289, 198 N. E. 2d 219, reported immediately preceding this case, in which the same issue was decided adversely to the appellant.

*Four*: Did the court commit error in not requiring the court reporter to "take down in shorthand" the proceedings in the trial of the cause as authorized by §4-3501, *supra*? The pertinent part of the controlling statute upon this issue is as follows:

> "For the purpose of facilitating and expediting the trial of causes, the judge of each circuit, . . . of each and every county of this state shall appoint an official reporter, whose duty it shall be, whenever required by such judge, to be promptly present in said court, and to take down in shorthand the oral evidence given in all causes, including both questions and answers, . . . admission and rejection of evidence and the objections and exceptions thereto, and write out the instructions of the court in jury trials. . . ." §4-3501, Burns' 1963 Supp., *supra*.

An examination of the above statute discloses that its purpose is to authorize the judge to appoint a reporter whose duty it is, upon the request of the judge, to take down proceedings orally had in said court and to preserve and record the same

for use during and after the trial. Although the statute, *supra*, provides that the court may request that such proceedings be taken down "in shorthand," it does not prohibit the use of stenotype machines or other mechanical devices for the purpose of preserving the record of such proceedings. We judicially know that it is now common practice in many courts of this state to use such devices and we approve the use thereof, providing they are adequate for the purpose. In any event, in this case appellants made no objection to the use of the particular recording equipment employed in the trial court. Therefore, any issue with respect thereto is waived.

*Five*: Appellants assert that the trial judge was guilty of misconduct which is cause for reversal, in that the judge erroneously and without cause, openly and before the jury, charged appellants' counsel with using unfair tactics in the trial. Appellants assert that the conduct of the judge must be accepted as erroneous since, after he made the charge against counsel and a recess was declared by the court, he "reneged" and required the witness to answer the question which had previously been propounded by counsel and rejected as improper by the judge.

An understanding of the events, regarding which appellants make their complaint, requires some explanation. Appellants have not fully and accurately stated the facts giving rise to this issue. The claim of the appellee was heard concurrently with the claims of three other parties—Marcella Lane [since deceased], Alice Sloss, and one Mildred LaFoon—all of which claims were for personal services performed for Flossie White and John J. White over a period of many months prior to their deaths.

Testimony had previously been produced that Marcella Lane, a niece of Mr. White who was a married woman, who then and for 30 years previously had lived with her husband in Indianapolis, had made numerous trips from her home in Indianapolis to Mr. White's home in Princeton, where she had spent many weeks at a time in order to take care of Mr. White and his first wife, Flossie White. Counsel for appellants, while interrogating his witness Lizzie White [subsequent wife of John J. White, deceased], propounded the question [referring to the claimant Marcella Lane]: "Did she make any phone calls to Mr. Cox?" Counsel for appellee objected to the question as being irrelevant. The objection was sustained, whereupon counsel for appellant, instead of making an offer to prove in the absence of the jury, made the following statement in open court: "The only thing is she testified [referring to Marcella Lane] every time she came down from Indianapolis she stayed with [the Whites] and I wanted to show that she didn't stay. That she called up Mr. Cox and made a date with him and left and went up there." [Mr. Cox lived in Vincennes.] Counsel for claimant asked that the jury be instructed to disregard the remarks of Mr. Wilson [counsel for appellants] as entirely out of place, which instruction was given. Mr. Wilson then persisted in arguing the question as to the propriety of his conduct by stating that both counsel for appellee and the court had *asked* him "if they [the phone calls] was some way *relative*." [Our emphasis.] Neither had made such a *request*, and the court admonished Mr. Wilson, stating: "You know better how to try a lawsuit than that." Thereupon the court declared a recess. We cannot say that the criticism of the court was either erroneous or an abuse of discretion. The

statement made by counsel was in defamation of the claimant's character. This circumstance demonstrates the reason for the rule that an offer to prove should be made in the absence of the jury.[1]

*Six*: In his closing argument counsel for appellee commented upon the fact that counsel for appellants had peremptorily challenged, and thus caused, ▮ the sole colored person selected on the jury panel to be dismissed. In this case, in which all the litigants were negro, the statement was clearly in bad taste, if not prejudicial error. However, counsel for appellants has not set forth in his brief either his objection to the statement or the instruction given the jury by the court with respect thereto. Appellee has provided this information in his brief, which indicates that the court instructed the jury to ignore the statement, as requested by appellants. In any event, after the court gave said instruction, it does not appear that appellants' counsel asked that the cause be withdrawn from the jury on the ground that the error was not cured by the instruction. Under the above circumstances, no issue is shown to be reserved for review by this court. *Ramseyer, Exr.* v. *Dennis* (1918), 187 Ind. 420, 116 N. E. 417; *Oppenheimer* v. *Craft* (1961), 132 Ind. App. 452, 175 N. E. 2d 715; *Kelley* v. *Hocutt, by Next Friend, etc.* (1955), 125 Ind. App. 617, 128 N. E. 2d 879; *Lawson* v. *Cole* (1953), 124 Ind. App. 89, 115 N. E. 2d 134.

Appellants could not gamble on the possibility of a favorable verdict by failing to move that the sub-

---

1. Although counsel for appellants was permitted to pursue his line of questioning after the court had reconvened, he produced no evidence that Marcella Lane had at any time "made a date with him [Mr. Cox] and left and went up there [from Princeton to Vincennes]" with him.

mission be set aside, and after an adverse verdict ask that it be set aside on appeal. *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629; *Chic. & Calumet Dist. Trans. Co.* v. *Vidinghoff* (1952), 122 Ind. App. 395, 104 N. E. 2d 405.

*Seven*: Appellants asserted in the motion for new trial that the verdict was contrary to law and was not supported by the evidence, in that the assessment of the amount of recovery was excessive. However, appellants, in support of this argument, have cited only evidence favorable to them. The evidence in support of the verdict is, in part, as follows:

In 1952, 1953 and 1954, the period of appellee's claim for services, John White had a heart condition which prevented him from doing almost anything in the nature of household duties generally performed by a man about his home.

His wife was a mental case requiring constant care, frequently becoming violent, so that restraint was required. She was a large woman, weighing approximately 285 pounds. She was bedfast almost a year in 1952-53, prior to her death, and required constant care of a baby. Frequently she would throw herself on the floor, and it required several people to lift her back in bed.

George Crow was requested by decedent to work at the house. He was there almost daily, and did housework, washed windows, tended the furnace, carried out ashes, mowed the lawn and trimmed the hedges, ran errands, procured medicine for both Mr. and Mrs. White, sometimes at his own expense. He assisted in lifting and caring for Mrs. White and helped restrain her when she became violent.

After the death of Mrs. White on March 6, 1953,

at Mr. White's request, George Crow stayed with him every night from March 6, 1953, to July 3, 1954.

A witness testified the reasonable value of like services, to those performed by George Crow, was $35 to $40 per week. Appellants objected to this testimony on the ground that it had not first been established that the witness was familiar with the reasonable value of such services in the particular community. However, their objection did not also question the witness' knowledge as to the value of such services generally. In the absence of proof of such knowledge, her testimony might have been excluded as a matter of law, beyond the discretion of the court. See: *First Bank & Tr. Co., etc., Exr.* v. *Tellson, supra,* 124 Ind. App. 478, 118 N. E. 2d 496; The weight to be given the testimony when admitted was an issue for the trier of the facts to determine. *State* v. *Vaughan et ux.* (1962), 243 Ind. 221, 184 N. E. 2d 143; *Eppert* v. *Hall* (1892), 133 Ind. 417, 31 N. E. 74; 8 I. L. E. §112, p. 104.

Furthermore, for technical reasons, appellants have presented no issue as to the competency of the witness, since they failed to indicate in their brief the pages and lines of the transcript where the evidence and rulings thereon are located. Supreme Court Rule 2-17; *Green* v. *Heaston, Rec.* (1900), 154 Ind. 127, 56 N. E. 87; 2 I. L. E. §385, p. 256.

Judgment affirmed.

Landis, C. J., Arterburn and Myers, JJ., concur.

Jackson, J., dissents (without opinion).

NOTE.—Reported in 198 N. E. 2d 222.