**AMERICAN FILMS, LTD., A Corporation, d/b/a Theatair–X Drive–In, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1–180A8.

Court of Appeals of Indiana, First District.

Jan. 5, 1981.

Carlo B. Coleman, Jeffersonville, for appellant.

Theodore L. Sendak, Atty. Gen., Frederick N. Kopec, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Presiding Judge.

American Films, Ltd., a corporation doing business as Theatair–X Drive–In, appeals a conviction in a jury trial of five counts of exhibition of an obscene performance, Ind. Code 35–30–10.1–3. The corporation was fined $5,000 on each count. The corporation presents three errors on appeal.

We affirm.

The first error alleged is the failure by the trial court to grant a motion to dismiss

by the corporation. Specifically on appeal, the corporation alleges that the information did not state the purported offenses with sufficient certainty and that the charging statute is unconstitutional. We determine that the motion to dismiss was properly denied. The record reveals that the information was filed on July 21, 1978. On July 31, 1978, counsel for the defendant entered his appearance. The corporation failed to make an answer to the information and, pursuant to IC 35–1–17–6, the clerk entered a plea of not guilty and set the case for trial.[1] This was done on October 20, 1978. On December 11, 1978, the corporation filed its motion to dismiss.

▮ IC 35–3.1–1–4(b) expressly provides that a motion to dismiss shall be made prior to arraignment and plea if based on certain grounds. The statute states, "A motion made thereafter may be summarily denied if based on the grounds specified in subdivision (a)(1) ... or (a)(9) of this section." Subdivision (a)(1) includes the allegation that the charging statute is unconstitutional. See IC 35–3.1–1–6(a)(3). Subsection (a)(9) includes the allegation that the information does not state the offense with sufficient certainty. Contrary to the corporation's allegation in its brief, the State raised below the issue that the motion to dismiss had not been timely filed. (Record at 43) The trial court properly denied the motion to dismiss. See Johnson v. State, (1977) Ind.App., 367 N.E.2d 25.

▮ The second error alleged on appeal concerns the trial court's granting the State's motion for presentation of the exhibits or evidence outside the courtroom environs. The obscene exhibition alleged in the information consisted of 35 millimeter films. Evidence was presented to the trial court that the showing of such films in the courtroom could be done only at a prohibitive cost. This was because of the profes-

sional quality projector needed to show such films and the cost of preparing such a projection for use in the courtroom. The State proposed, therefore, to show the films in a local theater located in Jeffersonville. At the trial level, the corporation objected to the showing of the films outside the courtroom environs because a record could not be made of the jury viewing the films and because the jury would comment on the films during the showing. On appeal, the corporation argues instead that the court lost jurisdiction of the case during the showing because the movie theater, and thus the circuit court, was not located at the county seat. It is basic that a defendant cannot raise new specific objections on appeal that were not presented to the trial level. See, e. g., Widmer v. Sweeney, (1955) 234 Ind. 263, 124 N.E.2d 385. We further fail to see any prejudice to the defendant in showing the films at a local movie theater. The trial court took every precaution that the jury treated the viewing in a proper manner. The jurors were cautioned not to discuss the trial amongst themselves while viewing the film and to treat the viewing with judicial decorum.

▮ The third and final error alleged on appeal is that the evidence was insufficient to sustain the jury's verdicts against the corporation. Specifically, the corporation claims the films were not obscene. IC 35–30–10.1–3 states in relevant part:

A person who knowingly or intentionally engages or participates in, manages, produces, sponsors, presents, exhibits, photographs, films, or videotapes any obscene performance commits a Class A misdemeanor.

The term "obscene performance" has been statutorily defined to be:

(b) 'Performance' means any play, motion picture, dance, or other exhibition or presentation, whether pictured, animated,

---

1. IC 35–1–17–6 provides in relevant part:

The corporation, on or before the return day of a summons duly served, may appear by one of its officers, or by counsel, and answer to the indictment or information by motion or plea, and, upon its failure to make such ap-

pearance and answer, the clerk shall enter a plea of "not guilty"; and, upon such appearance being made or plea entered, the corporation shall be deemed thenceforth continuously present in court until the case is finally disposed of.

or live, performed before an audience of one (1) or more persons.

(c) A matter or performance is 'obscene' if:

(1) The average person, applying contemporary community standards, finds the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex;

(2) The matter or performance depicts or describes, in a patently offensive way, sexual conduct; and

(3) The matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value.

IC 35–30–10.1–1(b) and (c).

There was testimony at trial by police officers which gave descriptions of each of the five films exhibited to the public by the defendant.[2] These descriptions revealed thin or nonexistent plots or story lines connecting a series of sexual acts including sexual intercourse, anal intercourse, cunnilingus and fellatio, all with genitals clearly exhibited. The films were also shown to the jury as exhibits.

In insufficiency claims, we will consider that evidence which is most favorable to the State, together with all logical and reasonable inferences to be drawn therefrom, and determine whether there has been substantial evidence of probative value sufficient to establish every material element of the crime charged regarding a reasonable doubt. *Inman v. State*, (1979) Ind., 393 N.E.2d 767; *Walters v. State*, (1979) Ind., 394 N.E.2d 154. We have already set out the statutory criteria that defines obscenity. Under our standard of review, we are of the opinion that the trier of fact had ample evidence to find that the films, taken as a whole, clearly appealed to a prurient interest in sex as their dominant themes and that the films lacked serious literary, artistic, political or scientific value. We therefore find no error as to this issue.

Judgment affirmed.

NEAL and RATLIFF, JJ., concur.

2. The titles of the films were "Sodom and Gomorrah" (purporting to show sexual mores of biblical tribes); "Autobiography of a Flea" (a period piece set in the 18th or 19th century); "Opening of Misty Beethoven" (the "Pygmali-on" of sexual prowess); "Teenage Cheerleaders" (described as containing almost no plot); and "Erotic Adventures of Candy" (dramatization of sexual dreams of a female).