The Toledo, Wabash, and Western Railway Company v. Owen.

| | |
|---|---|
| 43 | 405 |
| 126 | 366 |
| 48 | 405 |
| 140 | 660 |
| 142 | 314 |
| 43 | 405 |
| 168 | 364 |

Summons.—Service.—Railroad.—In an action against a railroad company to recover the value of stock killed, a return of the summons, "Served by reading to" A., "who is the local freight agent of said defendant, at the city of" ect., does not show good service under section 30 of the code.

Same.—Statute Construed.—Section 30 of the code contemplates cases where a corporation, company, or an individual has an office or agency in the county for the transaction of business, and the suit grows out of, or is connected with, the business of such office or agency.

Same.—Section 36 of the code designates three classes of officers or agents of corporations, upon whom process may be served; first, chief officers; second, officers of secondary rank; third, any persons authorized to transact business in the name of the corporation.

Same.—If no officer of the first or second class can be found, the service may be upon an agent or person of the third class. If the service is upon an officer or person of the second or third class, it must appear by the return that the officer or officers of the higher grades were not found in the county.

Same.—Under the act of March 4th, 1853 (note to 2 G. & H. 62), as amended (Acts Special Session, 1861, p. 78), the persons who may be served with process against a corporation whose principal office is not in this State are all of one grade, and service on any one of them is good without reference to whether others are found or not.

Same.—General Agent.—A local freight agent is a general agent of a railroad corporation within the meaning of the above act, and service on such agent is good, though there be a superintendent of the road and a director of the company residing in the county, and conductors daily passing on the trains.

Railroad.—Killing Stock.—Fence.—That a place on a railroad where an animal is killed is within a city, is not sufficient to excuse the company from fencing the road.

Same.—Evidence.—The plaintiff in a suit against a railroad company for killing an animal may show that after the killing the company repaired and built a fence at the point where the injury occurred, for the purpose of showing that the company regarded the place as one that might legally be fenced.

From the Tippecanoe Common Pleas.

W. Z. Stuart, for appellant.

W. C. Wilson, for appellee.

Downey, C. J.—This action was brought by the appellee against the appellant, to recover the value of a cow injured

so that she was of no value, by the locomotive and cars on the road of the defendant, at a place where, as is alleged, it could have been, but was not fenced. There was judgment in the common pleas for the plaintiff. There are three valid assignments of error.

1. Overruling the defendant's motion to set aside the service of the process.

2. Rejecting the second paragraph of the defendant's answer.

3. Overruling the defendant's motion for a new trial.

This action was commenced in the common pleas. The third section of the act authorizing such actions, 3 Ind Stat. 415, authorizes the service of the summons by copy on any conductor on any train on the road passing into or through the county. The return to the summons in this case does not show such a service, but after it was amended is as follows: "Served by reading to Mr. Vandusen, who is the local freight agent of said defendant, at the city of Lafayette, Indiana, February 10th, 1870." Signed by the sheriff. It is clear that the service is not good under section 30 of the civil code. 2 G. & H. 57. That contemplates cases where a corporation, company, or an individual has an office or agency in the county for the transaction of business, and the suit grows out of or is connected with the business of such office or agency. Then the service may be upon any agent or clerk employed in the office or agency. Section 36 of the civil code is as follows: "The process against a corporation may be served on the president, presiding officer, mayor, chairman of the board of trustees, or if its chief officer is not found in the county, then upon its cashier, treasurer, secretary, clerk, general or special agent, or, if it is a municipal corporation, upon its marshal, or, if it is an incorporated library company, upon its librarian; if none of the officers aforesaid can be found, then upon any person authorized to transact business in the name of such corporation."

This section appears to make three classes of officers or

The Toledo, Wabash, and Western R. W. Co. *v.* Owen.

agents of corporations upon whom process may be served. The first is the president, presiding officer, mayor, or chairman of the board of trustees. These are denominated chief officers. The second class consists of cashiers, treasurers, secretaries, clerks, general or special agents, or, in case of a municipal corporation, its marshal, or if it be a library company, its librarian. These are officers of secondary rank. The third class of persons are any persons authorized to transact business in the name of the corporation. If no chief officer, that is to say, an officer of the first class, can be found in the county, then the process may be served upon an officer of the second grade or class. If no officer of the first or second grade or class can be found, then the service may be upon an agent or person of the third grade. When the service under this section is upon an officer or person of the second or third grade, it should appear that the officer or officers of the higher grade or grades were not found in the county. Unless this shall appear by the return or in some other proper manner, the service will be insufficient.

The act of March 4th, 1853, found in the notes to 2 G. & H. 62, as amended in Acts 1861, Special Session, p. 78, is as follows: "That all writs, warrants, or other process issued, or to be issued, from any court of competent jurisdiction in this State, against the president of any railroad company whose principal office is not within this State, may be served on any officer, director, conductor, attorney, or general agent of said company, and said service shall be as binding and of the same effect as if the same had been served upon the president of the company: Provided, however, that process shall not be served upon any officer, director, conductor, attorney, or general agent who may be plaintiff in the suit, or who may have any interest therein against such company. Provided, further, that at least fifteen days notice shall be given of the time and place of the pendency of said suit." The persons on whom process may be served under this section are all of one grade, and service on any one of them is good without reference to whether others

are found or not. It was under this section, we presume, that the service in this case was intended to be made. The objection to the service is, that at the date thereof there resided in the county of Tippecanoe, D. A. Coleman, superintendent of said railroad for Ohio and Indiana, and James Speers, a director of the company, and that daily eight or more conductors passed through the county, on any of whom service could have been made. It was not denied that the principal office of the company was out of the State, and, hence, a service under this section was proper, if otherwise in accordance therewith. We think the matter resolves itself into the question, whether the local freight agent of the company, that is, the freight agent of Lafayette, was or was not a general agent of the company, within the meaning of the section of the act last quoted. If he was a general agent, then it was proper to serve the process on him, notwithstanding there was a superintendent of the road and a director of the company residing in the county, and several conductors daily passing through the county on their trains. A general agent is one authorized to transact all his principal's business, or all his principal's business of some particular kind. A special agent is one who is authorized to do one or more special things, and is usually confined to one or more particular transactions, such as the sale of a tract of land, to settle and adjust a certain account, or the like. That the authority of an agent is limited to a particular kind of business does not make him a special agent. Few, if any, agents of a railroad company do, or can attend to every kind of business of the company, but to each one is assigned duties of a particular kind, or relating to a particular branch or department of the business. We suppose from the name or designation of the agent in the return in this case, and from our knowledge of the manner of transacting such business, that the local freight agent is an agent whose duties are confined to a particular place, and who, at that place, has a general authority to receive freight to be carried by the company, to have the oversight of the same,

and to see that it is placed in the freight cars of the company for transportation, and that it is his duty also to take charge of freight which may arrive at his depot or station, and preserve the same, and to attend to its delivery to the consignee or his agent. He thus has power to transact all the business of the company of this particular kind, and to do acts binding upon the company, at the depot or station to which he is assigned. This, in our opinion, makes him the general agent of the company within the meaning of the section in question, and consequently authorizes the service of process upon him, the principal office of the company being out of the State. As to the authority of a freight agent to bind the company by his acts in the receipt of freight, and also by agreements as to the forwarding of the same, see *Deming* v. *Grand Trunk Railroad Co.*, 48 N. H. 455, *Burnside* v. *Grand Trunk R. W. Co.*, 47 N. H. 554; *Wilson* v. *The York, Newcastle and Berwick Railway Co.*, 18 Eng. L. & Eq. 557.

The second paragraph of the answer attempts to set up facts and circumstances to show that the appellant was not bound to fence or could not legally fence the railroad at the point where the injury to the animal occurred, which is alleged to have been at a point "inside the city of Lafayette as well as within the limits of the defendant's depot grounds, switches, side tracks and work yard as occupied, used, and operated by defendant as such and continued as such from her depot building eastward for a great distance, to wit, to the corporation limits of the city," etc. It is also stated, that in consequence of these facts, the company was not bound to fence the road and could not lawfully do so. It is difficult to see from these statements where the animal was injured. But conceding that the paragraph shows that the injury occurred at a point where the company could not fence, we still think there was no error in striking it out. The general denial was pleaded, and under the issue formed by it the defendant gave evidence as to whether the road could or could not be fenced. We do not find that it has been the

practice to plead specially the facts going to show that the road could not be fenced.

Just where the animal was injured, we can not tell from the evidence. The place was somewhere between Union street and Greenbush street in the limits of the city of Lafayette, but just at what point on the road between the two streets is not shown. That the place was within the city is not sufficient to excuse the company from fencing. This was so decided in *The Jeffersonville, etc., Railroad Co.* v. *Parkhurst,* 34 Ind. 501, and *The Toledo, Wabash, and Western Railway Co.* v. *Howell,* 38 Ind. 447. The map appended to the bill of exceptions and certified to be part of it, and the testimony in the case, show large blocks of ground of ten and twenty acres or more, on each side of the road, which were used for farming, within the points to which we have referred. The cases to which we have just alluded hold that under such circumstances the railroad company is liable for stock killed where the road is not fenced.

It appeared from the evidence that there was a fence along the road at the point in question, but the parts of the fence joining up to the cattle-guards at Salem street and at Greenbush street had been taken away, as it seemed, by the employees of the company, and that the cow got on the road at one or the other of the openings in the fence thus made and went along the road to the place where she was injured. On the trial of the cause, the plaintiff was allowed, over the objection of the defendant, to prove that the company was then repairing, or had lately repaired or replaced these parts of the fence. This ruling of the court was assigned as a reason for a new trial, and is urged here as an error. We think the evidence was properly admitted, to show that the company regarded the place as one where it might legally erect a fence. We do not find any error in the record.

The judgment is affirmed, with five per cent. damages and costs.