## Adams Express Company v. Tucker.

(Decided December 18, 1914.)

### Appeal from Franklin Circuit Court.

New Trial—Judgment—When Will Not Be Reversed.—Although Sub-section 6 of Section 340 of the Civil Code of Practice, provides, in terms, that a new trial may be granted when the verdict is not sustained by sufficient evidence, the rule is that a judgment will not be reversed merely because the verdict is not sustained by a preponderance or the weight of the evidence, but only where the verdict is clearly and palpably against the weight of the evidence.

T. L. EDELEN for appellant.

GUY H. BRIGGS, JAMES H. POLSGROVE and L. W. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

On August 17, 1911, the appellee, C. T. Tucker, delivered to the Adams Express Company, in Frankfort, a small paste board box tied with a string for shipment to "R. Russell, 2145 South Grand Avenue, St. Louis, Mo." The express agent gave Tucker the usual receipt for the box, which recited that is was "sealed and said to contain diamonds valued at $500.00."

Tucker testified that he told Huhn, the agent, to look and see that the diamonds were in the box, and that Huhn replied he was not permitted to do so by the company. Tucker further testified that Huhn put some paper around the box; that either Huhn or Tucker addressed it; and that Huhn put the seals on it, in Tucker's presence.

Tucker further says the box contained two diamonds, specifying their weight, for which he had agreed to pay $500.00. The ordinary charge for sending the diamonds to St. Louis was 25 cents, but Tucker had them insured and paid 75 cents as charges therefor.

Under cross-examination Tucker further testified:

"Q. Were you indicted in the Federal Court at Frankfort for a fraudulent scheme to use the United States mails for the purpose of swindling W. A. Gill out of these two diamonds? A. The charge I was indicted for was for performing a scheme of artifice. Q. For these two diamonds? A. These same two diamonds. Q.

Were you tried on that indictment? A. Yes, sir, I was tried on it. Q. What was the verdict? A. The verdict, upon the false testimony of Gill, was 'Guilty.' Q. By the court: Mr. Tucker, he just asked you what the verdict was? A. The verdict was 'Guilty.' Q. Has that verdict ever been set aside? A. Not that I know of. Q. I will ask you if the court did not, at your request, extend the time of the passing of the judgment until the next September term—or January term? Objected to and overruled. Q. I will ask you if you do not now stand subject to the punishment at the next term of the Federal Court here? A. I guess I do. Q. And these are the same diamonds that you are suing on here? A. They are the same diamonds.''

Huhn, the agent, testified as follows:

''Before issuing the receipt I seen the package. It was wrapped in paper and tied with a string and addressed to Rebecca Russell (I don't remember the exact number), and it had no value or anything else marked on it. I inquired of Mr. Tucker what it contained, and he said it contained diamonds; and I entered it into the receipt and asked him the value, and he stated he didn't think it was necessary to state the value; that he had been shipping packages to Lexington, or somewhere else, and they went through all right. I told him I would prefer that he declare a value, so in case they were lost he would have something to show for them, and he declared a value of five hundred ($500.00) dollars; and I issued a receipt and I sealed the package in his presence; and after sealing the package I issued the receipt and he said if I cared to examine them I could examine them. Q. After you put the seals on? A. Yes, sir. I could have examined the package to see, but I told him after the seals were on we could not open it. He didn't say what they were until I put the seals on the pack ge, and then I asked him what they were, and he said 'diamonds;' and I took his word for it and put the seal on it. The package does not state specifically that it contains diamonds, but it says, 'said to contain.' ''

Watson, a young man employed in the express office, entered the office about the time Tucker was leaving, and corroborated Huhn as far as his testimony went.

There is really little difference between Tucker and Huhn as to what passed between them in the office; the only difference being that Tucker says he told Huhn, before he sealed the box, that he could examine the dia-

monds; while Huhn says Tucker made that remark after the box had been sealed. This difference, however, is not material.

Mrs. Rebecca Russell, to whom the package was addressed, received it in due course of transportation and put it in her stocking, where she kept it for about two hours before opening it. She says the seals were intact, and it bore no evidence of having been opened, but, when she opened it, there were no diamonds in it.

Tucker brought this action on March 22, 1912, for the value of the diamonds and recovered a verdict and judgment for $500.00. The express company appeals upon the single ground that the verdict is clearly against the weight of the evidence.

The single question involved was, whether the diamonds were in the box when it was delivered to Huhn. The appellee's contention is sustained by his own testimony, and the corroborating testimony of Mrs. Russell, to the effect that the diamonds were not in the box when it was delivered to her in St. Louis.

The company did not give a receipt for the diamonds; it gave a receipt for a package which was sealed, and was "said to contain diamonds." The receipt, therefore, is not conclusive against the appellant; the case was to be tried under the parol testimony.

Elwood Hamilton, as attorney for Gill, testified as follows:

"Q. I will ask you to state in your own way whether you ever had any transactions with Mr. Tucker or conversation with him about these diamonds that he got from Mr. Gill? A. Yes, sir. Mr. Gill, from St. Louis, employed our firm to get the diamonds from Mr. Tucker, or the money. I went to see Mr. Tucker about it. Q. State about the matter just as far as you can? A. I can't remember just hardly about it now—that was in 1910 or maybe in 1911—I don't recall the year, even. Mr. Tucker was running a pool-room across on St. Clair street. I went over there to see Mr. Tucker, and found him in his pool-room and told him that Mr. Gill had been to see us and wanted to get his diamonds back; and I talked to Tucker about the matter and asked him where the diamonds were. Mr. Tucker said he didn't have the diamonds, and said he had pawned them for three hundred ($300.00) dollars; and if we would pay the three hundred dollars we could get the diamonds back. I wired Mr. Gill as to what Mr. Tucker had told me, and Mr.

Gill was not willing to pay the three hundred dollars. Q. Did anything further take place between you and Mr. Tucker about the diamonds? A. I think I talked to Mr. Tucker about it again and I told him that Mr. Gill was willing to give two hundred or two hundred and twenty-five dollars. I tried to find out the name of the man who had the diamonds—who he pawned them to—and he wouldn't tell me, and just said that a friend of his let him have the money. He wouldn't tell me who it was. That was about all the conversation I had with Mr. Tucker.''

Upon cross-examination, Mr. Hamilton fixed the time of the conversation as follows:

''Q. When was it you called to see Mr. Tucker about the diamonds? A. I don't even remember the year. I think it was about the latter part of April or first of May, 1911. Q. He told you at that time— A. It might have been in 1912. Q. And he told you at that time he had the diamonds pawned for three hundred dollars? A. Yes, sir—that is my recollection.''

Hamilton, James Andrew Scott, and Judge B. G. Williams, prominent attorneys at the Frankfort bar, and Mace Lucas, the county jailer, all testified that Tucker's character for truthfulness was bad.

Furthermore, Tucker did not contradict the statement of Hamilton relating to the conversation about the diamonds. If the conversation occurred in April or May, 1912, it was after the box said to contain the diamonds was delivered to the company on August 17, 1911; if, on the other hand, the conversation between Hamilton and Tucker occurred in April or May, 1911, it was only about three months before the shipment.

Appellee offers no explanation as to how he secured a return of the diamonds from his friend with whom he had pledged them; and, if they were pledged in May, 1912, of course, they had not been shipped and lost in August, 1911.

Although Sub-section 6 of Section 340 of the Civil Code of Practice provides, in terms, that a new trial may be granted when the verdict is not sustained by sufficient evidence, the rule is that this court will not reverse simply because the verdict is not, in our opinion, sustained by a preponderance or the weight of the evidence, but only where the verdict is clearly and palpably against the weight of the evidence. Bell v. Keach, 80

Ky., 42; L. & N. R. R. Co. v. Graves, 78 Ky., 74; Thompson v. Thompson, 93 Ky., 435.

Considering all the evidence, we think the verdict was clearly and palpably against the weight of it, thus bringing the case within the exception to the general rule above announced.

Judgment reversed.