# Kentucky Utilities Company v. White Star Coal Company.

(Decided June 24, 1932.)

760

GORDON, LAURANT & OGDEN and N. R. PATTERSON for appellant.

FRANK M. DRAKE, CLEON K. CALVERT, and J. G. BRUCE for appellee.

Opinion of the Court by Hobson, Commissioner— Affirming.

The White Star Coal Company brought this action against the Kentucky Utilities Company to recover damages for two fires, the first of which destroyed its rotary house, and the second destroyed its tipple and power house. The second fire occurred two days after the first. The issues were made up. Proof was heard, and the jury returned a verdict in favor of the defendant as to the second fire and in favor of the plaintiff for the first fire in the sum of $6,000, on which the court entered judgment. The defendant appeals.

The first question presented is, Was the evidence offered by the plaintiff sufficient to take the case to the jury as to the first fire? The facts are these:

The White Star Coal Company operates a coal mine in Harlan county near the railroad station Whilhoit, about seven miles south of Harlan. The Kentucky Utilities Company furnished electricity for the operation of the mine. It maintained, at the railroad station, three transformers; a high-tension line of 33,000 volts, consisting of three wires, entered the substation. This was reduced by the transformers to 2,300 volts, at which latter voltage the current was delivered to the coal company. Before the 33,000-volt line reached the transformers, there is what is known as the air-brake switch. This when open would disconnect all electric current from the transformers. Between the switch and the transformers there was a fuse in each of the three wires, which would melt and disconnect the service in case of an overload of current. From the transformers wires went to the rotary house of the coal company about two miles away. The proof for the plaintiff showed that for some months there had been trouble with the transformer next to the railroad track. The fuse would blow out; it would be put back; then it would blow out again. Sometimes this would happen in a few hours; at other times after some days; but it was always with the same transformer. Wires ran from each of the transformers to the coal mine, giving what is known as the three-phase service. When the fuse on the transformer next to the railroad would blow out, there would be trouble in the mine for lack of proper service. The first fire occurred on the night of November 20. The proof for the plaintiff showed that the mine had operated all day without any trouble

with the service, and everything was going on all right up to the time that the nightman left the rotary house between 11 and 12 o'clock. He took nine or ten men with him on a car, went down the hill, and after they got off brought the car back to the head of the mine, left it there, cut off the current, and went in the mine. He noticed no trouble up to this time. The rotary house stood on top of the hill, something over half a mile away from the head of the mine. It contained a rotary converter, three transformers, a switchboard, and other devices used in connection therewith. The current of 2,300 volts was reduced at the rotary house to 230 volts, which was passed into the mine. The night watchman left the converter and transformers operating as usual when he left the rotary house, went down the hill with the men on the car. The first that was known of the fire was between 4 and 5 o'clock in the morning, when the night watchman went back to the rotary house and found that it had burned down. The next morning the fuse at the transformer, which had been giving trouble, was found to be blown out. When the ruins left by the fire were examined, the rotary converter and transformers were found to be a melted mass of metal. The plaintiff's proof showed that there was nothing in the rotary house to cause a fire, except the oil in the air-tight transformers, and this would not burn in them; that the house was built of 2x4 scantling, 2 feet apart, to which iron sheeting was nailed. It was 16 feet square. The floor was of dirt, and the machinery sat on a concrete base. After the night watchman cut off the car that he used, there was no load on the electric current or, as he expressed it, "It was running idle". The plaintiff introduced one witness who said that the blowing out of the fuse would affect the machinery at the rotary house and would heat it if it was pulling a load. He also said that if it was not pulling a load it would cause it to heat if this went on long. Another witness testified that he had known the machinery to run for four hours in that condition.

The defendant earnestly asks a reversal on these grounds: (1) On the evidence that the court should have peremptorily instructed the jury to find for the defendant. (2) The court erred in the admission of evidence. (3) The verdict is against the evidence.

1. The rule is well settled that, if there is any competent and relevant evidence warranting a recovery, a

peremptory instruction should not be given. It is also the well-settled rule in cases of fires that the facts may be proved by circumstantial evidence, and that the case is for the jury where the facts reasonably warrant the conclusion asserted by the plaintiff. Here it was shown that the transformer next to the railroad had been giving trouble for months; that it was the same transformer all the time, while the two other two transformers along side of it gave no trouble; that the defendant worked on the transformer and temporarily restored the service, but in a short time it would blow out again. This had been going on so long and had occurred so often that it may reasonably be inferred that there was some trouble with this transformer, when it was shown that everything else was working all right and continued to work all right after the trouble with the transformer in each instance was removed. After each trouble the fuse on this transformer would be found blown out. The fuse would be put back and the transformer repaired, and then everything went on all right until the transformer blew out again. There was clearly evidence of want of ordinary care in letting this go on for months without more examination of that transformer to see what was the matter or what caused this trouble. In addition to this there was proof that the wires between this transformer and the rotary house were not insulated and were sagging. A strong wind was blowing on the night of the fire, and these wires were lapping, one upon the other, thus transferring the current from one to the other. If this, as insisted by the defendant, did not put a greater current at the rotary house, it must have put a greater current at the transformer. For when these wires lapped the current from one certainly went into the other in one direction or the other, and this would put a greater strain on the transformer or on the machinery at the rotary house. This may have caused the blowing out of the fuse at the transformer, or it may have caused a greater current on the machinery at the rotary house and thus produced the fire. In either event the defendant would be at fault, for, according to the evidence the blowing out of the fuse at the transformer would put a greater weight upon the machinery at the rotary house; which in a few hours' time might cause the fire. As nobody was at the rotary house from about 11 p. m. to nearly 5 a. m., the jury had a right to infer that in this length of time the heat of the motor caused the fire.

There was nothing in the house that could reasonably produce the result found after the fire. One witness testified that a part of the metal burns looked like they were of electrical origin while others did not show this. But the fact was that the wires inside of the machinery were burned in two, and this could hardly have occurred in any other way, except from electricity. The armature of the pump was burned off, and there were other like facts naturally warranting the conclusion that the fire was of an electrical origin, and warranting the submission of the case to the jury. Conn v. Lexington Utilities Co., 233 Ky. 230, 25 S. W. (2d) 370.

2. It is earnestly insisted that the court erred in admitting evidence that everything went on all right after the transformer next to the railroad was taken out after the second fire. In Union Light, Heat & Power Co. v. Lakemen, 156 Ky. 33, 160 S. W. 723, the court said this as to the admission of such evidence in an action to recover for personal injury from an electrical wire:

"The court allowed the plaintiff to show that the next morning after his injury, he called up the company and told them of the trouble; that it sent two of its men down to the shop who, after examining the shop, went to the pole referred to, and one of them, after going up the pole, called for a rope, with which he tied up the sagging wire, so as to take it off of the lower voltage wire; that when he had done this, the trouble was removed, and that the insulation on the wires had been burned off at the point of contact. It is insisted that this evidence was incompetent, and should not have been admitted. But the purpose of the evidence was not to show subsequent repairs for the purpose of establishing negligence on the part of the defendant; it was admitted for the purpose of showing the cause of the trouble. Electricity is a subtle agency, and the cause of the trouble was not known to the plaintiff until the agents of the company discovered the sagging wire and the destroyed insulation. The rule is well settled that changes, repairs or precautions after an injury are not admissible to show negligence, or as amounting to an admission of negligence. But one well settled exception to the rule is that such evidence is admissible to show that the condition complained of caused the injury."

See, also, 2 C. J., p. 1235; 3 Jones on Evidence, sec. 1043.

It is earnestly insisted that the proof that everything went on well after the defective transformer was taken out was not admissible, for the reason that, after the new transformer was put in, new buildings were erected, new machinery put in them, new wires put up, and that thus there was a different situation created, and that the fact that there was no trouble after this new situation was created may not be considered in determining the cause of the trouble at the time of the fire. But the fact is that none of this machinery that was destroyed and replaced had ever given any trouble. All the trouble had come from the defective transformer. After every interruption of the power it was found that the fuse there had blown out, and no trouble was discovered anywhere else. When the trouble in the transformer was remedied, everything went along all right until there was another blow-out. After the first fire, on Saturday night, the fuse was found blown out, just as it had been on every other occasion of trouble, and, when the trouble was repaired in this transformer, everything went along all right on Monday. After the second fire, this transformer, the next morning, was found in the same fix as it had been on Sunday morning. It seems clear that this evidence at least was competent, for in such cases proof must necessarily be made by circumstances. It is hard to see why like proof as to conditions after the second fire and after this transformer had been taken out, is not equally competent. For in fact nothing had been changed that had ever given any trouble except the transformer. If the proof as to the condition of things after the first fire is competent, the proof as to the condition of things after the second fire must be equally competent. If any change had occurred affecting the current in any way, then defendant could show this, but in the absence of any evidence, except the proof of the replacement of things that had never given any trouble, the evidence showed a proper circumstance for the consideration of the jury.

"Unquestionably the adduction of evidence that, under like circumstances, an alleged cause was present and an alleged result followed, has a tendency to prove a contention as to cause and effect in the particular case, and therefore, under the general

rule as to relevancy, such evidence is seemingly admissible; but unquestionably, also, such evidence can never be logically conclusive for the reason that the particular case may always differ from the analogies adduced. Moreover, the weight of such evidence must vary in each case with the number of similar cases brought forward for comparison, and the degree of similarity, or degree of success in explaining away partial dissimilarities.'' Jones, Commentaries on Evidence (2d Ed.), vol. 2, sec. 607.

The weight of the evidence or what effect shall be given to it for the jury, but any fact that may throw light on the cause of the trouble in a case like this is competent, for after all the truth may be only shown by circumstances, as electricity is invisible. The factors that continued were that there were the three transformers, only one of which had caused trouble and only one of which was replaced. Hence enough of the factors remained to make the evidence admissible for what it was worth. So far as appears, no substantial change was made after the second fire, except to replace what was burned and take out the transformer that had given all the trouble. When it was repaired after the first fire, everything ran all right. This proof was certainly competent as tending to show the cause of that fire, and for like reasons the proof as to conditions after the second fire was admissible.

3. The rule is well settled that a verdict will not be disturbed on the ground that it is not sustained by the evidence, unless it is palpably against the evidence. Adams Express Co. v. Tucker, 161 Ky. 741, 171 S. W. 428. There is little conflict in the evidence as to the material facts of the case, but there is decided conflict in the opinions of the experts on certain phases of the case. The credibility of the witnesses and the weight to be given the testimony was for the jury, and clearly the verdict is not palpably against the evidence.

It is also insisted that the amount found by the jury is excessive. The rule is well settled that a verdict will not be set aside on the ground that it is excessive, unless it is so disproportionate to the injury received as to strike the court at first blush as being the result of prejudice and passion. Cumberland R. Co. v. Bays, 159 Ky. 609, 167 S. W. 882, and other cases cited in notes to section 340 of the Civil Code of Practice. The proof for the

plaintiff was that the cost of replacing what was burned was a little over $7,000. The verdict of the jury was $6,000, which is a thousand dollars less than the cost of replacing the loss. There is no proof (except opinion evidence as to usual depreciation) as to how much what was lost had in fact depreciated, and the proof is everything was in good order and was working all right. In addition to this, the rotary house and the contents were but a link in the chain. The value of the chain when complete less its value when the link was out is to be considered in fixing the amount of the loss; for the defendant had to supply the link before it could use the chain. Under all the facts and circumstances the court cannot say that the verdict for $6,000 was palpably excessive.

Judgment affirmed.

The whole court sitting.