**CITY OF INDIANAPOLIS,**
**Appellant-Defendant,**

v.

**Richard L. SWANSON,**
**Appellee-Plaintiff.**

**No. 2–1179A336.**

Court of Appeals of Indiana.

June 29, 1982.

Sheila S. Suess, John P. Ryan, Corp. Counsels, City of Indianapolis, David F. McNamar, Michael R. Franceschini, Steers, Sullivan McNamar & Rogers, Indianapolis, for appellant-defendant.

C. Warren Holland, Roy Tabor, Wilson, Tabor & Holland, Charles G. Reeder, Johnson & Weaver, Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

The City of Indianapolis appeals the verdict of a Marion Circuit Court jury finding the City negligent in signing a curve on Sargent Road. The jury awarded the plaintiff, Richard Swanson, $185,000 to compensate him for injuries suffered in a one-car automobile accident as a result of the City's negligence.

The City contends certain of the trial court's evidentiary rulings were contrary to law and an abuse of discretion. The City also challenges the propriety of some of the court's jury instructions.

We find no error by the trial court and accordingly affirm.

## SUMMARY OF FACTS

During the early morning hours of May 25, 1975, Richard Swanson and his passenger, Anita Karto, were traveling in an automobile along Sargent Road in a suburban area of Indianapolis. Although the weather was clear and dry, it was dark and Swanson was unfamiliar with the roadway.

As Swanson approached a curve he saw a left-reverse-curve sign warning of a curve

to the left and then back to the right. When Swanson turned, his car left the pavement, traveled through a fence and struck a tree. Swanson's head hit the steering wheel, and, as a consequence, he suffers from grand mal epileptic seizures, depression and a personality disorder.

Swanson sued the City of Indianapolis for damages to compensate him for his injuries, alleging the city was negligent in not properly signing and marking the road. The jury awarded him $185,000 and the City appeals.

### ISSUES

The City cites the following issues for review:

1. Did the trial court commit reversible error by allowing evidence of subsequent remedial measures?

2. Did 'the trial court improperly allow the deposition of a witness to be read at trial?

3. Did the trial court improperly allow into evidence a memorandum prepared in anticipation of trial?

4. Did the trial court commit reversible error by advising the jury of the purposes for which they might consider evidence of subsequent remedial measures?

5. Did the trial court abuse its discretion in limiting the scope of the City's cross-examination of the plaintiff?

6. Did the trial court abuse its discretion in refusing to permit two of the City's witnesses to testify?

7. Did the trial court commit prejudicial error in admitting into evidence a thoroughfare plan of Marion County over objections the exhibit had not been authenticated?

8. Did some of the trial court's instructions to the jury misstate the law and mislead the jury?

9. Did the trial court abuse its discretion in refusing two of the City's tendered jury instructions?

10. Was the defendant denied fundamental due process and a fair trial because the jury was made aware of remedial measures taken by the City after the accident?

### DISCUSSION

#### I. Subsequent Remedial Measures

■ It has long been the law in Indiana that evidence of remedial measures is not admissible to prove the defendant's negligence. *Sievers v. Peters Box and Lumber Co.*, (1898) 151 Ind. 642, 50 N.E. 877, *rehearing denied* 151 Ind. 642, 52 N.E. 399; *Board of Commissioners of Wabash County v. Pearson*, (1891) 129 Ind. 456, 28 N.E. 1120; *City of Goshen v. England*, (1889) 119 Ind. 368, 21 N.E. 977; *Dudley Sports Co. v. Schmitt*, (1972) 151 Ind.App. 217, 279 N.E.2d 266.

However, various exceptions to the exclusionary rule have developed. Thus evidence of subsequent remedial measures, while not admissible to prove antecedent negligence, has been admitted to prove defendant's control or ownership, *City of Lafayette v. Weaver*, (1883) 92 Ind. 477; *Town of Argos v. Harley*, (1943) 114 Ind.App. 290, 49 N.E.2d 552; to prove the possibility or feasibility of preventive measures when properly in issue, *Indianapolis & St. Louis R.R. Co. v. Horst*, (1876) 93 U.S. 291, 23 L.Ed. 898; *Toledo, Wabash and Western R.R. Co. v. Owen*, (1873) 43 Ind. 405; *Hickey v. Kansas City Southern R.R. Co.*, (Mo.1956) 290 S.W.2d 58; to prove a faulty condition, later remedied, was the cause of the injury by showing that after the change the injurious effect disappeared, *Kentucky Utilities Co. v. White Star Coal Co.*, (1923) 244 Ky. 759, 52 S.W.2d 705; and to contradict facts testified to by the adversary's witness, i.e., impeachment, *Kenny v. Southeastern Pennsylvania Transport*, (3rd Cir. 1978) 581 F.2d 351; *Daggett v. A.T. & S.F. R. Co.*, (1957) 48 Cal.2d 655, 313 P.2d 557; *Brazil Block Coal Co. v. Gibson*, (1903) 160 Ind. 319, 66 N.E. 882.

Because of the inherently prejudicial nature of the evidence, these exceptions are invoked infrequently and with care. We are accordingly sensitive to efforts by a plaintiff to introduce evidence of subsequent remedies if they are not in issue or

the defense has not opened a door justifying an exception.

Pursuant to Ind.Rules of Procedure, Trial Rule 32(A)(2),[1] Swanson, during his case in chief, introduced the depositions of James Cox, Indianapolis Chief Traffic Engineer, and Glyn Tabor, Section Chief of the sign department. The City objected to those two depositions because 1) Cox testified about subsequent remedial measures by the City and 2) Tabor was not authorized to speak for a party and was not an officer, director or managing agent of the City.

Of particular concern to the City was that these two depositions revealed the City replaced the left-to-right curve sign at the accident scene with a right-to-left reverse turn sign and relocated it to the north of the original sign site.

■■■ However, any error in Swanson's use of subsequent remedial measures was waived by the City's introduction later of the same evidence during its case in chief. It is well settled that error in admitting evidence at the trial is not available on appeal where the complaining party submits evidence similar in its import to that which was alleged to be improper. *State v. Monninger*, (1962) 243 Ind. 174, 182 N.E.2d 426; *Leuck v. Goetz*, (1972) 151 Ind.App. 528, 280 N.E.2d 847. Although it had steadfastly objected to evidence by Swanson of subsequent remedial measures, the City covered the same ground on direct examination when it asked Cox to give his opinion about the adequacy of the original sign.

"Q. And how did you interpret the manual (Indiana Manual on Uniform Traffic Control Devices) as to what particular signs could be utilized to mark curves on that particular road on May 25, 1975?

1. Trial Rule 32 provides:

"(A) Use of depositions. At the trial . . . any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party . . . in accordance with any one [1] of the following provisions:
(1) . . . .
(2) The deposition of a party, or an agent or person authorized by a party to testify or

"A. . . . [O]ur interpretation and conclusion was that the use of the reverse turn sign . . . was more appropriate . . . and (we) relocated (it) in order to show the two sharp turns as opposed to the sign that was . . . there on the date of the accident, which showed it was a reverse curve sign. The reverse curve sign to us indicated that, in fact, the road did curve or bend first to the left and then the curve of the road bent back to the right, and in our analysis of the physical features of that roadway that the first curve to the left was not of sufficient severity or sharpness to merit the curve connotation that the other two curves farther to the south did merit the turn and the warning to the motorist."

In addition, Cox suggested the original sign, although defective, had not been moved to a better location because of the foliage.

"Q Now with respect to that (original) sign and the placement of that sign, is that sign too close to the road given the criteria in the Indiana Highway Manual?

"A Yes it is.

"Q And are there any other defects with respect to its placement given the criteria of the manual?

"A It is mounted too low or there is insufficient distance between the bottom of the sign and the edge of the pavement.

"Q Are there any other possible—

"A Physically? Physical locations?

furnish such evidence or of anyone who at the time of taking the deposition was an officer, director, or managing agent, executive officer or a person designated under Rule 30(B)(6) or 31(A) to testify on behalf of an organization, including a governmental organization, or partnership which is a party may be used by an adverse party for any purpose."

"(Q) ... Yes sir.

"A Perhaps the sign should have been located farther toward the north in order to have been more in advance in this turn—change in alignment, but then the foliage ... would have probably prohibited that because the foliage would have blocked the sign."

On cross-examination, Swanson produced evidence of a post-accident sign inventory indicating again the new sign was placed north of the curve, despite the foliage and despite any assertion such a move was not feasible. We find no error in such a use of remedial measures where feasibility is questioned by the defendant. Moreover, in light of Cox's testimony for the defense, we find any error in the premature admission of evidence of subsequent remedial measures to have been waived.

## II. The Tabor Deposition

The City challenges the introduction of the deposition of Section Chief Tabor because it also presented evidence of subsequent remedial measures and because Swanson neither made a showing that Tabor was a managing agent under Ind.Rules of Procedure, Trial Rule 30(B)(6) nor that he was unavailable for trial. Without such a showing, the City contends, admission of the deposition was improper and prejudicial.

The test to determine whether a person serves as a managing agent for deposition purposes is not his title, but the function performed in furtherance of the party's activities and interests. Only if the person has general powers to exercise his judgment and discretion dealing with corporate matters may he be deemed a managing agent. *Scott County School District I v. Asher,* (1974) 160 Ind.App. 299, 303, 312 N.E.2d 131, 135.

In *Asher,* we found a shop teacher who was responsible for determining the type of saw to be purchased for his shop class as well as the safety features to be included was a managing agent of a school for purposes of T.R. 32(A)(2) in a suit by a student injured in class.

The record in this case does not support a finding that Tabor, a section chief in the city's sign department, had general powers to exercise his judgment or the discretion to deal with matters of roadway warnings on Sargent Road without prior approval from his superiors. Unlike the shop teacher, he was not responsible for determining standards of safety nor was he charged with the responsibilities of independent decision making. Rather, Tabor was instructed only to investigate the scene, report to his superiors with facts and recommendations, and then carry out the decisions of his superiors. Tabor's recommendations carried great weight and influence, but he lacked the managerial discretion to execute his ideas. Consequently, the Tabor deposition should not have been admitted without some showing he was in fact a managing agent for the city or was unavailable to testify at trial.

Like the Cox deposition, however, the only danger to the City was the harm which could be caused by a jury interpreting the post-accident changes as evidence of negligence. Because the trial court repeatedly admonished the jury not to receive the evidence for that purpose and because the City introduced its own evidence of the sign changes, we do not find the admission of the Tabor deposition to have been prejudicial.

## III. Privileged Memorandum

The City next contends the trial court improperly admitted a memorandum by Cox summarizing the results of his investigation after the accident. The City argues the memorandum was prepared in anticipation of trial and was protected by the attorney-client privilege.

The record discloses the document was prepared by Cox for the Indianapolis Department of Transportation, which requested an investigation by the Traffic Engineering Division after Swanson filed a notice and statement of claim. During pre-trial discovery, the City provided Swanson with a copy of the memorandum. At trial,

the City objected to the admission of the memorandum into evidence on grounds it was both irrelevant and protected by the attorney-client privilege. The City did not argue the relevancy of the document on appeal and that objection was waived.

We find no merit in the assertion the memorandum was protected by an attorney-client privilege. The memorandum was made available to Swanson's counsel by Cox during a pretrial deposition. The record before us does not indicate any objection to discovery of the memorandum prior to trial.

The memorandum was made in preparation for handling a claim filed against the City. Nothing suggests the memorandum, even if made with an eye to future litigation, was communicated to or intended to be communicated to an attorney for the purpose of professional advice or aid. Rather, the record indicates the memorandum was an internal document labeled "Departmental Correspondence" and copies were provided only to Department of Transportation officials.

In *Coleman v. Heidenreich*, (1978) 269 Ind. 419, 381 N.E.2d 866, our Supreme Court noted that what is essential to the privilege is the confidential relationship of a client and attorney. "The burden of proof is on the person asserting the privilege to show that the consultation was a professional one." Id. at 381 N.E.2d 869.

Neither the record nor the City's argument in this case shows the memorandum was any part of a confidential relationship between the City and an attorney. We therefore find no error in the trial court's decision to admit it into evidence.

### IV. Admonition to the Jury

The City next contends the trial court improperly admonished the jury concerning the purposes for which it could consider evidence of subsequent repairs. The gist of the trial court's admonition was the jury could not consider subsequent repairs as evidence of negligence, but could consider it as evidence of the City's control over the property or the feasibility by the City to make repairs.

It is not improper for the trial court, in ruling on certain evidence offered, to make a statement as to the theory of its admissibility and effect, where he does not use any improper language, prejudge the case, or criticize either the parties or the witnesses. *Queen Insurance Company v. Studebaker Brothers Manufacturing Co.*, (1889) 117 Ind. 416, 20 N.E. 299. Moreover, it appears the City on appeal bases its objection on the theory the court at trial made unnecessary remarks about questions of fact that tended to prejudice the City's case or influence the minds of the jury. The record does not indicate that same objection was made at trial. Rather counsel's objection was to the introduction into evidence of testimony about subsequent remedial measures. We find no specific objection at trial to the manner or intent of the remarks made by the Court. If there was any error, it was waived by counsel's failure to make a specific objection. *Clark v. Clark*, (1980) Ind.App., 404 N.E.2d 23.

### V. Limitation on Cross-examination

The City also contends the trial court abused its discretion in limiting the City's cross-examination of the plaintiff. Swanson testified he suffered from epileptic seizures and was under medication and a physician's care. He described the events which led him to seek medical help and the subsequent tests and treatment. On cross-examination, counsel for the City asked:

"Q. Have you been seen by any other physicians other than Dr. Wallack, Dr. Fisher and Dr. Rehn with respect to your present—following the seizures? (Objection sustained.)

"Q. Did you see Dr. John Mealey? (Objection. Question rephrased.)

"Q. Did Dr. Mealey treat you at all?
"A. No, sir....

"Q. Did Dr. Mealey evaluate you? (Objection)

"THE COURT: Well it's not relevant to cross-examination or any other evidence and so the objection will be sustained."

The City alleges the court denied its right to cross-examine Swanson upon a subject

properly within the scope of direct examination.

Whether a question on cross-examination is within the scope of direct examination is a determination to be made by the trial court within its sound discretion. This court will not interfere with that discretion, unless there is a clear showing of abuse on the part of the trial court. *Ringham v. State*, (1974) 261 Ind. 628, 308 N.E.2d 863. In this case we see no abuse of discretion by the trial court in terminating an inquiry of defense counsel into the medical evaluation of the plaintiff by a non-treating physician.

Conflict in the opinions of medical experts about Swanson's condition had the appearance of straying far from the scope of the witness's testimony on direct examination. If the City's intent by this line of questioning was to establish that Dr. Mealey's opinion of the plaintiff's condition was different from the physicians who treated Swanson, he was free to do so in his own evidence in defense. However, a party may not establish a defense or rebuttal by cross-examining a witness as to matters not within the scope of direct examination. *Potter v. State*, (1971) 257 Ind. 370, 274 N.E.2d 699. We note the City later did offer during its case in chief evidence of this medical dispute about Swanson's injuries and also exercised the opportunity to directly examine the plaintiff. We do not find the trial court, in controlling the scope and extent of cross-examination, abused its discretion or caused prejudice to the defendant.

The trial court also sustained an objection to questions on cross-examination about a conversation between undercover police officer Thomas Breen and Swanson on March 16, 1979. The City argues the questions were for purposes of impeaching the witness by the use of prior inconsistent statements.

The City on several occasions during trial attempted to introduce evidence Swanson sold illegal drugs to Officer Breen and during the transactions told Breen his injuries were a fraud. The trial court consistently rebuffed each attempt to introduce that evidence because its relevance was so grossly outweighed by the prejudicial character of the testimony as to be unfair. Like Justice Cordozo in *Shepard v. United States*, (1933) 290 U.S. 96, 104, 54 S.Ct. 22, 25, 78 L.Ed. 196, the trial court found "[t]he reverberating clang of those accusatory words would drown all weaker sounds."

The trial court necessarily has wide latitude in permitting cross-examination to test the credibility of a witness and only clear abuse of such discretion demands reversal. *Brooks v. State*, (1973) 259 Ind. 678, 291 N.E.2d 559. In the absence of redeeming probative value, exclusion of relevant evidence because of its capacity for prejudice is within the trial court's discretion and we will review only for abuse of that discretion. The danger of "unfair prejudice" is that evidence which appeals to the jury's emotions or biases may cause it to base its decision on something other than the established propositions in the case. The essence of the trial court's duty is to weigh the probative force of the evidence against the danger of prejudice in light of those trial conditions and circumstances he can observe. *See, Smith v. Crouse-Hinds Co.*, (1978) Ind.App., 373 N.E.2d 923. It not only is the duty to make judgments about the admissibility of controversial evidence but the trial court is in the best position to make those judgments. Accordingly, we will reverse the trial court only when its conclusion and judgment is "clearly against the logic and effect of the facts and circumstances before the court of the reasonable, probable and actual deductions to be drawn therefrom." *Dunbar v. Dunbar*, (1969) 145 Ind.App. 479, 251 N.E.2d 468.

In this case, the trial court excluded evidence Swanson had acted in a manner inconsistent with his position in court because the evidence consisted of unproven accusations of criminal activity by the plaintiff. Officer Breen was ready to testify Swanson was a drug dealer. Whatever the probative value of that testimony, its appeal to the jury's sense of outrage that a

drug dealer should dare demand compensation is a factor of legitimate concern to the trial court. The probative value of Breen's testimony was threatened by the propensity of the evidence to suggest a decision on an improper basis.

We do not think exclusion of the evidence was clearly against the logic and effect of the facts and circumstances before the court. Consequently, we do not find an abuse of the trial court's discretion in ruling upon the admissibility of the evidence.

## VI. Exclusion of Testimony

■ The City also contends the trial court abused its discretion in excluding defense witnesses Royce Cole and Thomas Breen from testifying.

Eight days before trial and about six months after the close of discovery, the City amended its witness list by adding 15 new names. Among those names was Breen. Swanson objected, complaining this was the City's third list, and it was much too late for the plaintiff to interview 15 potential defense witnesses with only a week before trial.

Indiana Rules of Procedure, Trial Rule 16(I) and the trial court's pre-trial order required immediate notification of opposing counsel of any witnesses discovered after the October pre-trial conference. Although there is merit in the City's contention that Breen was a newly discovered witness, we find no showing any of the other witnesses were newly discovered. We do not know why the City chose to obscure the presence of a major witness amid a list of more than a dozen new witnesses submitted only a week before trial. We do know its effect was to put Swanson in a position of choosing between another delay in a case already four years old or of going to trial ill prepared through no fault of his own. We do not find the trial court abused its discretion in rejecting the witness list. It was a case of too many too late.

We note also that exclusion of the late witness list did not prevent the City from offering Breen as a newly discovered witness at trial. The exclusion of his testimony at trial was not because his name appeared on an improper witness list, but because his testimony was deemed by the trial court to be prejudicial and misleading.

As for witness Cole, whose name appeared on no witness lists, the trial court ruled his testimony as a defense witness was irrelevant. Cole would have testified he responded to a complaint by Mrs. Aloma Karto on January 29, 1977, that Swanson was at her home, was belligerent, violent and refused to leave. Cole would have testified that on this occasion Swanson "smelled of alcohol", his speech was impaired and he staggered. This testimony of drunken behavior was to be offered to contradict testimony by Mrs. Karto that at unspecified times after the accident Swanson exhibited a violent change of personality and at those times was not to her knowledge under the influence of alcohol.

Because it was not established on cross-examination that either of the incidents Mrs. Karto described was the same as that which officer Cole attended, the City laid no foundation for Cole's contradictory testimony. We find no abuse of discretion by the trial court in sustaining the objection to Cole's testimony.

## VII. Admission of Thoroughfare Plan

■ The City next contends one of the exhibits, a thoroughfare plan for Marion County, was not properly authenticated.

The record indicates the trial court sustained the objection by the City on the question of authentication. Nevertheless the court permitted the exhibit for the limited purpose of establishing the classification of Sargent Road as a secondary arterial roadway. From our reading of the record and examination of the exhibit, however, it appears the thoroughfare plan although admitted for a limited purpose, was not used for any other purpose thereafter by counsel for either side.

Under these circumstances, we find any error in permitting the unauthenticated document into evidence to have been harmless.

## VIII. Instructions

The City complains the trial court gave improper instructions to the jury and refused to give proper ones. The gravemen of the objections to the instructions was that they implied the City had an absolute duty to sign and mark its roads in conformity with the Indiana Manual of Uniform Traffic Control Devices.

 We do not agree and find no merit in the assertion the instructions would be likely to mislead a jury into believing the law in Indiana creates an absolute duty to mark and sign every road in the city's jurisdiction. The instructions describe the City's duty as the exercise of reasonable care in maintaining the roadways and to warn of hazards. The jury was properly instructed it could and should consider whether the evidence of maintenance and warnings undertaken by the City reflected this standard of reasonable care.

Moreover, the City's tendered instruction on contributory negligence was adequately covered by other instructions and we find no error by the trial court in refusing it. See Dahlberg v. Ogle, (1978) 268 Ind. 30, 373 N.E.2d 159.

In sum, Swanson presented sufficient evidence of probative value in this case to convince a jury he was injured as a result of a misleading sign placed along Sargeant Road and for which the City of Indianapolis was responsible. We do not find that evidence of remedial measures was prejudicial to the defense or that the trial court abused its discretion in deciding the evidentiary questions presented to it. Accordingly, we affirm the trial court.

MILLER, P. J., concurs.

YOUNG, J., dissents with further opinion.

YOUNG, Judge, dissenting.

I dissent.

The City contends that the court erred in admitting evidence of post-accident replacement and relocation of the sign on Sargent Road. The majority recognizes the inher-ently prejudicial nature of such evidence but says the error was waived by the City introducing evidence on the same subject. I disagree. There is no waiver when a party attempts to explain the improperly admitted evidence to minimize the damage done by the improper admission of that evidence. Leuck v. Goetz, (1972) 151 Ind. App. 528, 280 N.E.2d 847.

Evidence of subsequent signing at a different point was improperly admitted to the City's prejudice, contrary to the rule we adopted in Ortho Pharmaceutical Corp. v. Chapman, (1979) Ind.App., 388 N.E.2d 541. The evidence does not fall within any of the exceptions. Evidence of change subsequent to the date of the accident was simply irrelevant. The City's responsibility for signing at the place of the accident was admitted. As we stated in Ortho, the damage is that the jury, influenced by hindsight, might apply an artificially higher standard in determining the adequacy of signing. Ortho, supra at 561.

Next, the City contends the court erred in the admission of the Tabor deposition. The majority recognizes that the admission of the Tabor deposition without some showing that he was in fact the managing agent for the City or was unable to testify was error. Ind.Rules of Procedure, Trial Rule 32(A). They find the error harmless. For the reasons stated above, it was error to admit evidence of post-accident signing. That evidence was erroneously admitted and it is no excuse for admitting further evidence of the same magnitude in the form of Tabor's testimony without a proper foundation. The admonitions upon which the majority relies to find harmless error are of little help. Again the issues for which the jury was instructed to consider the evidence were not disputed.

The City next contends that the admission of a departmental memorandum over objection that it was a privileged communication was error. A notice of claim, a prerequisite to filing suit under Ind.Code 34–4–16.5–7, was made. An investigation of the claim was conducted in order to discern the facts in anticipation of a response to the

claim asserted, whether it be to settle the matter or to defend the claim at trial. The memorandum was prepared as part of this investigation. There can be no question that this matter was privileged. "A statement concerning an accident obtained by an employer for the bona fide purpose of being later transmitted to the employer's attorney for advice, or to be used by the attorney in connection with pending or threatened litigation, is privileged, because it is part of [the] communication from the client to his counsel." 81 Am.Jur.2d *Witnesses*, § 206 (1976); Annot., 146 A.L.R. 977 (1943). Once the notice of claim was filed, the City could reasonably expect that suit was forthcoming. The statements near the end of the departmental memorandum also indicate it was prepared with the intent to be sent to employer's counsel. Statements concerning the difficulty of defending and the feasibility of an out of court settlement would be part of the communication from client to counsel. The memorandum was privileged.

The City also argues the trial court's admonitions were improper remarks upon questions of fact. Because the evidence concerning the City's re-signing was improperly admitted, the trial court's admonition regarding the jury's consideration of subsequent changes was also improper. Furthermore, this issue was not waived.

Next, the City alleges that it was improperly denied its right to cross examine Swanson as to whether he had been evaluated by a Dr. Mealey and to lay a foundation for discussions with Thomas Breen. The inquiry of Swanson on cross-examination as to whether he had been evaluated by Dr. Mealey was proper and should have been allowed. Had he not been evaluated by Dr. Mealey, he could have said so. If he denied such evaluation and it had in fact occurred, Dr. Mealey could have been called to impeach Swanson.

Counsel for the City sought to lay a foundation for impeachment of Swanson but was cut off.[1] Later when Breen was called

1. "Q. On March 16, 1979 at the International Harvester Bar did you represent to Thomas Breen—

"MR. HOLLAND: Your Honor, I am going to object and then we have just got to have some rules on this—

"THE COURT: Mr. McClelland, we are going to get into some reprimands here.

"MR. HOLLAND: May we approach the bench, Your Honor?

"THE COURT: I'm going to let the Jury out of here for a minute.

"THE COURT ADMONISHES THE JURY

"THE JURY LEAVES THE COURTROOM

"THE COURT: Mr. McClelland, we have been walking into a mistrial here for three days and you're right on the brink of it and Tom Breen, as I know, (this is on the record) is a narcotic man. I've signed many search warrants for him and if you've got any arrests and convictions of narcotics they are not even admissible. Now let's get that straight. We've been skating on thin ice for three days here. Now if you want to go down the tube, that's entirely up to you. But, stay off of it and that's it.

"THE COURT: Mr. McClelland, I want to apologize for getting a little shook up there but just a few moments before that you said that you weren't going to get into this. I happen to know who Tom Breen is. I happen to know the purpose for which you were bringing it up and as I said yesterday morning prior to starting this trial if you guys want to try a criminal case go down to Criminal One, Two, Three or Four.

"MR. MCCLELLAND: It was not my intention to bring up any statements with respect to the things we talked about. I had other—

"THE COURT: I haven't sat here for almost three days to go into a mistrial at this stage of the game. I thought we'd be in one before noon yesterday and I'm not going to tolerate that.

"MR. MCCLELLAND: I understand.

"THE COURT: You just stood up here a few minutes before and said that you weren't going to do that.

"MR. MCCLELLAND: And I wasn't—

"THE COURT: But you did it. When we had our little conference here, you said that you weren't going to do it and then you started out with this watering hole business and the International Bar out there and Tom Breen. I happen to know who Tom Breen is. I've signed many search warrants for him on narcotics. So we're going to try a civil suit here and I'm not going to tell you how to try it but we're going to try a civil suit here. We're not going to try a criminal case. If you want to try a controlled substance case why [sic] you go down to Criminal Court and do it. I'm not going to have to sit all day long and admonish this Jury and get placed in the trick bag and I think that's what you're trying to do to me. All right bring the Jury in.

"JURY COMES INTO OPEN COURT.

by the City his testimony was not permitted. The exclusion of the testimony of Officer Breen by the trial judge was also improper. The fact that Breen's name as a witness appeared with fifteen others a week before trial is of no moment and no reason to exclude his testimony. The trial court had withdrawn the pretrial order concerning exchange of witness lists. The following offer of proof was made:

"MR. MCCLELLAND: Were Officer Breen permitted to testify, he would testify in substance as follows: On March 16, 1979, he purchased from Richard Swanson marijuana in the amount of thirty five dollars. On March 23, 1979, he also purchased marijuana from Richard Swanson in the amount of one hundred dollars. If he again were permitted to testify, Officer Breen would testify that Richard Swanson told him that he took a physical for the Indiana State Highway Commission for the purposes of failing that physical for the purposes of this trial here this week and today. Additionally, he would testify, if he were permitted to, that Mr. Swanson told him he did not suffer from seizures, that he could not take a job until this trial was over and that any cash that he received had to be in cash so that there were no record of any money that he received. Additionally, he indicated to Officer Breen that he sold drugs before, had a supplier and that he could get him whatever he needed. We think that that goes into to rebut the testimony of Richard Swanson about the nature of the sources of his income and that is relevant. The fact that he chooses to make this money from an illegal transaction does not shield him from our having the opportunity to get in that and show what in fact he does. And, that is our offer to prove."

Swanson's income and alleged loss of wages was a relevant issue as was the validity of his claim of injury. Thus his occupation, part or full time, and the source and amount of his income were relevant. Many other lines of work might be personally offensive to jurors, but that would not prevent a recovery for damages or prevent counsel for the defendant from exploring the truth on cross-examination. The "accusatory words" referred to by the majority citing *Shepard v. United States*, (1933) 290 U.S. 96, 104, 54 S.Ct. 22, 25, 78 L.Ed. 196 included a statement made by the victim in a murder case who said to a nurse that her husband had poisoned her. They were admitted improperly as a dying declaration. That authority is inapplicable here. Also, Breen's testimony that Swanson admitted he was not really injured, but merely trying to defraud the City was clearly admissible as an admission of a party-opponent. This evidence was probative of a major disputed question of fact and not unduly prejudicial. The probative value of Breen's testimony outweighed any prejudicial effect. Breen's testimony should have been permitted.

Later in the trial, the City called Royce Cole, a Marion County Deputy Sheriff, as a witness for the purpose of rebutting the testimony of Mrs. Aloma Karto. Karto testified that when Swanson had an "episode" in her home, he had not been drinking and drugs were not involved. The trial judge ruled that Cole would not be allowed to testify and the defendant made the following offer to prove:

"MR. MCCLELLAND: Thank you. If Officer Cole were permitted to testify here today, he would testify in substance as follows: That he was called to the residence of approximately 7000 South Ratliff Road on 1/29/77, approximately two fifty three A.M., wherein two female subjects were reporting that a man was beating them and threatening them and that the subject did not live there and refused to leave. If Officer Cole were permitted to testify, he would testify that he went into the home and that he pulled Mr. Swanson out of a bed and that Mr.

"THE COURT: Be seated. Ladies and Gentlemen of the Jury the last question the objection to which has been sustained and you are not to consider that question or any other questions or evidence that has been not admitted into evidence in reaching or arriving at your verdict in this case. Allright, next question."

Swanson was—smelled of alcohol, that his speech was impaired and that he walked in a very staggered manner and Officer Cole took him to the Marion County Jail. This is all contrary to what Mrs. Karto had testified to and we think that we can offer that to rebut her testimony and that works no hardship at all upon the plaintiffs and is not prejudicial to them in any way and that it is proper testimony."

No other foundation was necessary. The testimony of Cole contradicted that of Karto and would have left it to the jury to determine who was telling the truth regarding the "episode." It was not impeachment, but two different versions by two witnesses of a single event.

Next the City argues the trial court erred in giving plaintiff's instructions no. 2, 3, 6, and 7 (court's instructions 5, 6, 8, and 9) and not giving its instructions no. 4 and 7. The majority finds no merit in the City's argument that plaintiff's instructions were misleading and also holds the City's instructions were covered by others. I agree with the City that the combination of court's instructions no. 5, 6, 8, and 9 lead to the inference that the City's duty of signing and marking Sargent Road was only proper or adequate if done in accordance with the Indiana Manual on Uniform Traffic Control Devices for Streets and Highways. This is not so. As we said in *Smith v. Cook*, (1977) 172 Ind.App. 610, 361 N.E.2d 197 the manual is intended as a guide with flexible qualities for local governments and imposes no absolute duty to sign or mark in accordance with its recommendation. In addition the court's instruction no. 9 was repetitive of the court's instruction no. 8. The giving of the instructions in this case was erroneous because of their imposition of a duty on the City to adhere to the manual.

I would reverse and order a new trial.